UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

v.

26 Cr. 100 (ER)

YIH-SHYAN LIAW, TING-WEI SUN,

Defendants.

Arraignment and Conference
------------------------------x

New York, N.Y.
April 1, 2026
11:56 a.m.

Before:

HON. EDGARDO RAMOS,
District Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
BY: DAVID ROBLES, ESQ.
KEVIN T. SULLIVAN, ESQ.
JULIANA N. MURRAY, ESQ.
Assistant United States Attorneys

PETRILLO KLEIN & BOXER LLP
Attorneys for Defendant Yih-Shyan Liaw
BY: NELSON A. BOXER, ESQ.
GUY PETRILLO, ESQ.

AKIN GUMP STRAUSS HAUER & FELD LLP
Attorneys for Defendant Ting-Wei Sun
BY: JAMES J. BENJAMIN, JR., ESQ.
KATHERINE R. GOLDSTEIN, ESQ.

ALSO PRESENT: JASON LIANG, ESQ., LIANG LY LLP
DAVID HOFFMAN, ESQ., PETRILLO KLEIN & BOXER LLP
For Defendant Yih-Shyan Liaw

ALSO PRESENT: GEORGE E. PENCE, ESQ.
AKIN GUMP STRAUSS HAUER & FELD LLP
For Defendant Ting-Wei Sun

ALSO PRESENT: TUO TO HUANG, Interpreter (Mandarin)

(Case called)

THE DEPUTY CLERK: Counsel, please state your name for the record.

MR. ROBLES: Good morning, your Honor. David Robles for the government, joined at counsel table by assistant U.S. Attorneys Kevin Sullivan and Juliana Murray.

MR. BOXER: Good morning, your Honor. Nelson Boxer and Guy Petrillo for Mr. Liaw. We also have present in court Jason Liang and David Hoffman. They'll be submitting their appearances soon. Mr. Liang already has a matter in front of you. Thank you, your Honor.

THE COURT: Okay.

MR. BENJAMIN: Hello, your Honor. Jim Benjamin from Akin Gump, appearing on behalf of Ting-Wei Sun. Also present in the courtroom are my colleagues Katie Goldstein and George Pence. Ms. Goldstein has filed a notice. Mr. Pence's notice and *pro hac vice* motion will be submitted shortly.

THE COURT: Thank you.

Before we go much further, I want to note for the record that we are being assisted by I believe a Mandarin interpreter, so——and Mr. Boxer, how do you pronounce your client's last name?

MR. BOXER: Liaw.

THE COURT: Liaw. So let me ask Mr. Liaw and Mr. Sun whether you are able to hear and understand the interpreter.

DEFENDANT LIAW: Yes.

DEFENDANT SUN: Yes.

THE COURT: Everyone can remain seated. You don't have to stand.

Very well. So let me ask Mr. Robles, have the defendants been arraigned on the charges?

MR. ROBLES: They have not yet, your Honor. They were presented in the Northern District of California on March 19th, but have not yet been arraigned on the indictment.

THE COURT: Okay. Mr. Boxer, have you received a copy of the indictment?

MR. BOXER: We have, your Honor.

THE COURT: And has your client received a copy of the indictment?

MR. BOXER: He has, and he's reviewed it.

THE COURT: And do you wish a public reading of the indictment?

MR. BOXER: We do not, your Honor.

THE COURT: How does your client plead, guilty or not guilty?

MR. BOXER: Not guilty.

THE COURT: Mr. Benjamin, have you received a copy of the indictment?

MR. BENJAMIN: Yes, your Honor.

THE COURT: Has your client received a copy of the

indictment?

MR. BENJAMIN: Yes, he has, your Honor.

THE COURT: Have you reviewed it with him?

MR. BENJAMIN: Yes, your Honor.

THE COURT: Does he wish a public reading?

MR. BENJAMIN: No.

THE COURT: How does he plead?

MR. BENJAMIN: Not guilty.

THE COURT: Very well. Mr. Robles, I have read the indictment. It is a speaking indictment, so it's fairly detailed, but why don't you give me an overview of the case and include in that overview, if you would, the discovery in this case and when it can be produced to the defendants, if it has not been.

MR. ROBLES: Of course, your Honor.

As the Court is aware from the indictment, this case concerns an alleged conspiracy to unlawfully divert U.S. artificial intelligence technology to China. As set forth in the indictment, between 2024 and 2025, the government alleges that the defendants conspired with each other and with others to divert U.S. export control technology to China without a license to do so and to conceal those efforts from both U.S. authorities and others. As a result of that alleged conduct, the defendants are charged in three counts——conspiring to violate the Export Control Reform Act; conspiring to smuggle

goods from the United States; and conspiring to defraud the United States.

The defendants——as I mentioned earlier, the two defendants who are here today were arrested on March 19th in the Northern District of California. One of their co-defendants, Mr. Chang, remains at large.

With respect to——

THE COURT: You say he remains at large. Is he in the country, so far as you know?

MR. ROBLES: Not as far as I know, your Honor.

THE COURT: Okay. Go ahead.

MR. ROBLES: With respect to discovery, the parties were discussing, just prior to this conference, that the government anticipates providing to counsel a proposed protective order governing discovery later today, and expects to begin making rolling productions of discovery in the next approximately two weeks.

THE COURT: Okay.

MR. ROBLES: The discovery is quite voluminous. It includes, among other things, backups of cloud and email accounts obtained pursuant to search warrants. The government will also produce the corresponding search warrant applications for those accounts. It also includes electronic communications between the defendants and other co-conspirators, as well as voluminous materials that were obtained during the course of

the investigation from third parties, including, among other things, email communications, bank records, and shipping records, as well as records obtained by the FBI and the Department of Commerce in connection with the investigation. It's the government's anticipation that within the next approximately 60 days we will complete or substantially complete the production of Rule 16 discovery that is currently in the government's possession. Of course the government's investigation remains ongoing, and to the extent additional material comes into the possession of the government that is discoverable, we'll produce that on a rolling basis as well.

THE COURT: Okay. Can I ask you, what is the government's theory of venue in the Southern District?

MR. ROBLES: There were a number of wires that transited through the Southern District of New York to pay for the servers that are at issue in the case.

THE COURT: And let me also ask whether the government intends to rely on any classified information in connection with the prosecution of this case.

MR. ROBLES: We are still assessing that, your Honor. I don't anticipate that to be the case. If that changes, we will promptly let the Court and counsel know.

THE COURT: Please do, because I would have to get a clerk cleared if that is going to be the case.

Very well. Thank you.

Mr. Boxer, how did you wish to proceed?

MR. BOXER: We look forward to receiving the discovery. It does appear that much of it is in Mandarin, or at least that's my educated guess. I know the government has their own systems for providing what I will call convenience translations, and I think their intention is just to give us the raw data and have us find our own system to have them translated. 60 days is fine, as far as coming back, but voluminous sounds pretty voluminous, so we'll see where we are in 60 days.

THE COURT: And how do you intend to provide this information, the discovery, to the defendants, Mr. Robles?

MR. ROBLES: Your Honor, we'll provide it in electronic format in a manner——in the same manner it was extracted from the devices and accounts from which they were obtained.

THE COURT: Have you seized the telephones from the defendants after their arrests?

MR. ROBLES: We have, your Honor. Devices were seized from both defendants in connection with their arrests. We're in the process of processing those and extracting them. We don't yet have an estimate for the Court on when we will be able to actually access the material that's on there, but as soon as we do, we'll of course promptly review it and produce it to counsel.

THE COURT: Have you imaged those items, and if so, do you intend to produce those images to the defense?

MR. ROBLES: Once we are able to access the contents of those devices and image them, we will produce the images of those devices to the defense.

THE COURT: Very well.

MR. BOXER: And your Honor, if it's helpful, our client was questioned, interrogated——you can use whatever term you want——to turn over his password for the two devices at the time of the search warrant, and he did so. So whether that is a basis for a motion sometime in the future, we're looking into it.

THE COURT: So he did turn over his passwords; your client did?

MR. BOXER: He did.

THE COURT: And did Mr. Sun do the same or no, as far as you know?

MR. BENJAMIN: He did, your Honor.

THE COURT: So the government is presumably able to access the devices.

MR. ROBLES: Your Honor, I say that with some hesitation because there are some technical difficulties that are always associated with accessing devices, even if we have pass codes for them.

THE COURT: Okay. Very well.

And Mr. Benjamin, any objection to coming back in 60 days?

MR. BENJAMIN: No, your Honor. That schedule is acceptable to us.

I did want to just say a word about bail.

THE COURT: Very well.

MR. BENJAMIN: We have been working diligently to try to put together a bail package. We are in discussions on that topic with the government. We are hopeful that that may result in an agreed package, and we will keep the Court informed on that, but that's a top priority for us, your Honor.

THE COURT: Very well. Is your client a U.S. citizen, Mr. Benjamin?

MR. BENJAMIN: No, he is not.

THE COURT: What about Mr. Liaw?

MR. BOXER: He is.

THE COURT: He is. Okay.

And I take it neither of the defense teams are CJA.

MR. BENJAMIN: That's correct, your Honor.

MR. BOXER: Correct, your Honor.

THE COURT: Okay. Very well.

Ms. Trotman, can we get a date 60 days out.

THE DEPUTY CLERK: June 10, at 11 a.m.

THE COURT: Very well. Does that work for everyone?

MR. BOXER: That's fine, your Honor. Thank you.

MR. BENJAMIN: That's fine, your Honor.

THE COURT: Okay. Is there anything else that we should do today, Mr. Robles?

MR. ROBLES: Your Honor, just two things.

The first is, the government would respectfully request that the Court exclude time from today until June 10th under the Speedy Trial Act to allow the government to begin producing discovery, for the defense to receive it, review it, and consider any potential motions.

And the second is, if the Court is inclined, the government would respectfully ask that the Court set a trial date at the end of the year. It's our understanding that the Court has some availability in November. So if the Court is inclined to do that, we'd propose that the Court set a date.

THE COURT: How long will this case take to try?

MR. ROBLES: It's our current expectation that the case, the trial would not last more than approximately two weeks.

THE COURT: Two weeks?

Any objection to setting a trial date, Mr. Boxer?

MR. BOXER: No objection to setting one. Whether we're back in court asking for more time remains to be seen, but it does seem like there's quite a lot of material. No objection to putting something on the calendar today.

THE COURT: Mr. Benjamin?

MR. BENJAMIN: Same, your Honor.

THE COURT: Ms. Trotman.

THE DEPUTY CLERK: November 2.

THE COURT: Okay. So November 2.

But let me, before we get to the scheduling, ask Mr. Boxer whether there's any objection to the exclusion of speedy trial until June 10.

MR. BOXER: There is not, your Honor, and Mr. Petrillo and I have discussed it with Mr. Liaw, and he consents.

THE COURT: Very well. Mr. Benjamin?

MR. BENJAMIN: No objection, your Honor.

THE COURT: Very well. So let me first exclude the time between now and June 10 under the Speedy Trial Act. I find that the interests of the defendants, Mr. Liaw and Mr. Sun, outweigh the interests of the public in a speedy trial for the reasons set forth on the record by Mr. Robles.

And now with respect to the November——you said November 2, Ms. Trotman?

THE DEPUTY CLERK: Yes.

THE COURT: ——November 2 trial date, it is my practice to require that the parties submit the following four weeks prior to November 2: And those are any motions *in limine*; proposed jury instructions; verdict sheet, proposed verdict sheet; and proposed voir dire questions.

Two weeks thereafter, the parties should submit any

objections to the other side's submissions in that regard.

And we will hold a final pretrial conference the Thursday before November 2nd, at 2 in the afternoon.

Anything else, Mr. Robles?

MR. ROBLES: Not from the government, your Honor. Thank you.

MR. BOXER: No, your Honor.

MR. BENJAMIN: No, your Honor.

THE COURT: In a case of this size, it also appears that it is an aggressive schedule, so please let me know as soon as you are able whether there will be any motion practice prior to the submissions that we discussed because I'd like to get those as soon as possible. Okay?

Okay. We're adjourned. Oh, before we adjourn, I do have to give the government an admonishment pursuant to Rule 5(f).

I direct the prosecution to comply with its obligation under *Brady v. Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution. Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands these obligations and will fulfill them, Mr. Robles?

MR. ROBLES: Yes, your Honor.

THE COURT: Thank you. Now we're adjourned.

THE DEPUTY CLERK: All rise.

o0o